**L. BALKIN BUILDER, Inc.**
v.
**The UNITED STATES.**
**No. 153–53.**

United States Court of Claims.
Decided June 5, 1956.

ly justify its effort to require the defendant to share the blame for a contract which was beyond plaintiff's capacity.

Ernest Schein, Washington, D. C., for plaintiff. Henry M. Kannee, Washington, D. C., was on the brief.

Francis P. Borden, Jr., El Dorado, Ark., with whom was Acting Asst. Atty. Gen. George S. Leonard, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This case is before the court on defendant's motion for summary judgment dismissing plaintiff's petition. The petition sets forth three causes of action allegedly arising out of two Government contracts.

Plaintiff alleges that the first two causes of action arose under a contract designated as Contract No. W–11–032 eng-2124, which was entered into by plaintiff and the United States Corps of Engineers on July 21, 1945. Under the terms of the contract plaintiff contracted, for a fixed fee, to construct certain buildings and to repair certain existing buildings at Fort Sheridan, Illinois. The specifications contained the following provisions:

"*Rate of Wages:*

"(a) The minimum wages to be paid laborers and mechanics on this project as determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed in projects of a character similar to the contract work in the pertinent locality are set forth below. * * *

"The wages specified in this schedule shall be the maximum wages to be paid subject, however, to Executive Order No. 9250 and the General Orders and Regulations issued thereunder."

The foregoing provisions also set forth, among others, the following rates:

Laborers ............. $1.10 per hour
Bricklayers .......... $1.75 per hour
Power equipment
operators .......... $1.70 per hour

At the time plaintiff entered into the above contract, the Wage Adjustment Board, an agency of the National War Labor Board, had approved the following rates for such labor under the provisions of Executive Order No. 9250, with respect to certain nonfederal construction work in the Chicago area:

Laborers ........$1.20 per hour
(May 2, 1945, case No. 52–6292)
Bricklayers .....$1.90 per hour
(June 1, 1945, case No. 52–6111)
Power equipment $1.85 per hour
operators ......(June 22, 1945, case No. 52–6276)

Plaintiff alleges that although the decisions of that Board authorizing these rates specifically exempted "Federal" construction, it was forced to pay the higher wages because labor could not be obtained at the lower rates.

Upon learning of the increased rates plaintiff notified defendant's U. S. Engineer's Office of this fact by letter dated July 30, 1945, and during subsequent conferences. The U. S. Engineer's Office, by letter dated September 4, 1945, acknowledged that the Wage Adjustment Board had approved the new rates, but stated that it was not authorized to

approve higher wages than those specified in the contract.

The final completion date required by the contract was November 15, 1945, and the contracting officer subsequently determined that the contract was completed on or about that date.

On March 20, 1946, plaintiff filed a claim with the contracting officer requesting payment of the amount it paid to workmen in excess of the wage rates set forth in the specifications. Plaintiff also filed a second claim based upon overtime premium payments to its employees. In support of its second claim, plaintiff alleged that delays were caused by the Government and other factors beyond plaintiff's control, but that the Government required plaintiff to complete the contract by the performance date called for in the contract, thereby necessitating the overtime premium payments.

On October 29, 1946, the contracting officer notified plaintiff that its claims were denied. Plaintiff appealed to the Secretary of War. However, there was no final action on plaintiff's claims because, after a number of conferences, plaintiff informed defendant by letter dated December 15, 1947, that it was withdrawing its claims and suing in the U. S. District Court for the Northern District of Illinois.

Plaintiff filed suit on its two claims in the district court on or about December 18, 1947. This suit was dismissed without prejudice on April 2, 1952. Plaintiff filed its petition in this court on April 15, 1953, setting out the two aforementioned claims as its first two causes of action.

The plaintiff's third cause of action is a claim for damages caused by alleged misrepresentations as to prevailing wage rates in the specifications of a contract designated as No. W–11–032–eng–2361, prepared by defendant's Corps of Engineers and dated June 20, 1947, whereby plaintiff agreed to construct officers' quarters at Granite City, Illinois.

The specifications contained the following provision:

"The minimum wages to be paid laborers and mechanics on this project, as determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the pertinent locality are set forth below."

The specifications in question correctly stated the rates as determined by the Secretary of Labor to be prevailing at the time the contract was signed. Less than a month later, however, the Secretary issued a new determination fixing higher rates as prevailing. Plaintiff alleges that it was compelled to pay the higher rates and seeks to recover the additional amount it paid in wages.

As was stated in Holton, Seelye & Company v. United States, 65 F.Supp. 903, 906, 106 Ct.Cl. 477, 499, " * * * No fixed rule as to when a claim or cause of action accrues can be stated and applied in every case * * *." However, the general rule adopted by this court is that where claims arise under a contract to perform work, the completion of the work and its acceptance are what start the statute to run. Joplin v. United States, 89 Ct.Cl. 345, 356; Pennsylvania Coal & Coke Corporation v. United States, 70 F.Supp. 136, 108 Ct.Cl. 236, 247.

The first claim is for damages caused by alleged misrepresentations in the contract specifications as to the maximum wage rates in the contract area. The second cause of action is for overtime premiums paid plaintiff's employees pursuant to alleged wrongful requirements of defendant. All events which would give rise to each of the first two claims of plaintiff had occurred when the work was completed and accepted. Thus plaintiff could have sued at that time, and it was then that his first two causes of action accrued. The petition was filed April 15, 1953, more than 6 years after the first accrual of plaintiff's claims. Therefore, plaintiff's first 2 claims in the

petition are barred by the 6-year statute of limitations.

Plaintiff's third cause of action is for damages caused by alleged misrepresentations in the contract specifications as to the wage rates prevailing in the contract area.

■ The decision of the Supreme Court in United States v. Binghamton Construction Co., 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594, which holds that the schedule of minimum wage rates included in a general construction contract, as required by the Davis-Bacon Act, 40 U.S. C. § 276a (1946 ed.), 40 U.S.C.A. § 276a, is not a representation of warranty as to the prevailing wage rates in the contract area, seems to us to be decisive of this third cause of action.

The plaintiff's attempt to distinguish the Binghamton case does not persuade us. The Supreme Court in that case specifically held, 347 U.S. at page 178, 74 S. Ct. at page 442:

> " * * * On its face, the Act is a minimum wage law designed for the benefit of construction workers. The Act does not authorize or contemplate any assurance to a successful bidder that the specified minima will in fact be the prevailing rates. Indeed, its requirement that the contractor pay 'not less' than the specified minima presupposes the possibility that the contractor may have to pay higher rates. Under these circumstances, even assuming a representation by the Government as to the prevailing rate, respondent's reliance on the representation in computing its bid cannot be said to have been justified."

The plaintiff claims only that the determination of the current prevailing wage rates as required by the Davis-Bacon Act, supra, was an incorrect statement of the actual prevailing wage and that a determination made some weeks later after the contract was signed was correct. However, as was stated in the Binghamton case, "The correctness of the Secretary's determination is not open to attack on judicial review."

In the light of the Binghamton case, it is quite apparent that the wage rates specified in this contract were not a representation or warranty as to the prevailing wage rates in the contract area, notwithstanding the fact that the wage rate in the instant contract is both minimum and maximum and the wage rate in the Binghamton case was minimum.

Plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.